Marty Harper (#003416)
mharper@polsinelli.com
Andrew S. Jacob (#22516)
ajacob@polsinelli.com
Jennifer Axel (#023883)
jaxel@polsinelli.com
**POLSINELLI SHUGHART, P.C.**
CityScape
One East Washington St., Suite 1200
Phoenix, AZ 85004
Phone: (602) 650-2000
Fax: (602) 264-7033
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Don ADDINGTON; John BOSTIC; Mark BURMAN; Afshin IRANPOUR; Roger VELEZ; Steve WARGOCKI; Michael J. SOHA; Rodney Albert BRACKIN; and George MALIGA, on behalf of themselves and all similarly situated former America West pilots,<br><br>*Plaintiffs*,<br><br>vs.<br><br>US AIRLINE PILOTS ASS'N, an unincorporated association; and US AIRWAYS, INC., a Delaware corporation,<br><br>*Defendants.* | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT ON DUTY OF FAIR REPRESENTATION AND ORDER ENJOINING PILOT INTEGRATION THAT DOES NOT USE THE NICOLAU AWARD SENIORITY LIST** |

Plaintiffs Don Addington, John Bostic, Mark Burman, Afshin Iranpour, Roger Velez, Steve Wargocki, Michael J. Soha, Rodney Albert Brackin, and George Maliga file this complaint to enjoin Defendants from integrating the pilot operations in a manner that breaches Defendant USAPA's duty of fair representation.

For their Complaint, Plaintiffs allege as follows:

1

2840096.5

## INTRODUCTION AND PARTIES

1. In 2005, US Airways (a bankruptcy debtor) and America West Airlines merged to form a new airline also called US Airways.

2. The pilots on both sides of that merger (the "East Pilots" from US Airways and the "West Pilots" from America West) agreed to an arbitrated merger of their separate seniority lists.

3. That arbitration was conducted by George Nicolau and an award creating a merged seniority list (the "Nicolau Award") was announced in May 2007.

4. The East Pilots immediately repudiated their agreement to treat the Nicolau Award as final and binding.

5. In mid 2007, the East Pilots formed a single-airline union, Defendant US Airline Pilots Association ("USAPA"), to oust the multi-airline union that was representing these pilots, the Airline Pilots Association ("ALPA").

6. At the time, ALPA (which they could not control) was ordering the east Pilots to use the Nicolau Award list.

7. The East Pilots formed USAPA and ousted ALPA because their majority status in the post-merger airline allowed them to control a single-airline union that only represented US Airways pilots.

8. In April 2008, USAPA succeeded ALPA as the bargaining representative.

9. Under East Pilot control, USAPA also repudiated the agreement to honor the Nicolau Award.

10. The West Pilots have been engaged in litigation with USAPA since October 2008 to defend the Nicolau Award.

11. Most recently, USAPA entered into a contract with US Airways that further repudiates USAPA's duty to honor the Nicolau Award.

12. This action seeks an order enjoining USAPA from taking any steps to integrate pilot operations that does not implement the seniority order set out in the Nicolau Award.

13. Plaintiff Don Addington is a resident of the State of Arizona, who at all times relevant to this Complaint, has been a West Pilot.

14. Plaintiff John Bostic is a resident of the State of Arizona, who at all times relevant to this Complaint, has been a West Pilot.

15. Plaintiff Mark Burman is a resident of the State of Florida, who at all times relevant to this Complaint, has been a West Pilot.

16. Plaintiff Afshin Iranpour is a resident of the State of Arizona, who at all times relevant to this Complaint, has been a West Pilot.

17. Plaintiff Roger Velez is a resident of the State of Arizona, who at all times relevant to this Complaint, has been a West Pilot.

18. Plaintiff Steve Wargocki is a resident of the State of Arizona, who at all times relevant to this Complaint, has been a West Pilot.

19. Plaintiff Michael J. Soha is a resident of Washington State, who at all times relevant to this Complaint, has been a West Pilot.

20. Plaintiff Rodney Albert Brackin is a resident of Arizona, who at all times relevant to this Complaint, has been a West Pilot.

21. Plaintiff George Maliga is a resident of Arizona, who at all times relevant to this Complaint, has been a West Pilot.

22. Defendant USAPA is an unincorporated association with a principal place of business in Charlotte, North Carolina.

23. Defendant US Airways, Inc., is a Delaware corporation having its principal place of business in Tempe, Arizona.

24. The Allied Pilots Association ("APA") is an unincorporated association with a principal place of business in Fort Worth, Texas.

25. APA is not named as a defendant.

2840096.5

26. AMR Corporation ("AMR"), a Delaware corporation with a principal place of business in Fort Worth, Texas, is currently a Chapter 11 debtor.

27. AMR is not named as a defendant.

## JURISDICTION AND VENUE

28. This Complaint asserts a claim arising under the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, and seeks declaratory judgment pursuant to 28 U.S.C. § 2801, and injunctive relief pursuant to Federal Rule of Civil Procedure 65(b).

29. This Court has original federal question jurisdiction over the claim against Defendants USAPA and US Airways pursuant to 28 U.S.C. § 1331.

30. Venue is proper in the District of Arizona, pursuant to 28 U.S.C. § 1391(b), because:

   a) A substantial part of the events or omissions giving rise to the claims occurred in that judicial district; or were directed at affecting one or more Plaintiffs residing in that district; and/or

   b) The principal place of business of Defendant US Airways is situated in that judicial district.

31. Any requirement to exhaust intra-union hearing procedures is satisfied because internal union remedies here are inadequate or illusory and because exhaustion would be futile due to USAPA's consistent position in opposition to Plaintiffs.

32. This action became ripe on or about February 13, 2013, when USAPA, APA, US Airways and AMR entered into the *Memorandum of Understanding Regarding Contingent Collective Bargaining Agreement* in

4

which USAPA dishonors the Nicolau Award without any legitimate union purpose for doing so, in breach of its duty of fair representation.

## FACTUAL ALLEGATIONS

33. In May 2005, the former US Airways was in Chapter 11 bankruptcy for the second time in two years.

34. The US Airways reorganization plan called for it to merge with America West to form a new airline that would also be known as US Airways, pursuant to a contract referred to as the "Transition Agreement."

35. At the time of the merger, there were significant differences between the two airlines and their pilot groups.

36. US Airways was a larger airline; including pilots on furlough, East Pilots outnumbered West Pilots, approximately 5,100 to 1,900.

37. All of the West Pilots were active (had flying jobs).

38. In contrast, approximately 1,700 of the East Pilots were on furlough.

39. At the time of the merger, the Air Line Pilots Association ("ALPA") represented both pilot groups.

40. Under ALPA governance, each pilot group was represented by a Master Executive Council ("MEC").

41. The chairmen of each ALPA MEC signed the Transition Agreement on behalf of their pilot groups.

42. The Transition Agreement provided, among other things, that the pilot groups would create a single integrated seniority list according to defined procedures set out in detail in the ALPA constitution and called "ALPA Merger Policy."

43. Pursuant to ALPA Merger Policy, the single integrated seniority list would be created by two Merger Committees, appointed by each MEC and representing the pilot group governed by that MEC.

44. Under ALPA Merger Policy, if the Merger Committees cannot negotiate or mediate seniority integration they proceed to arbitration.

45. The purpose of such arbitration is to determine a "final and binding," "fair and equitable" seniority integration.

46. The two pilots groups, East and West, proceeded into arbitration.

47. The East Merger Committee argued in the arbitration that the East Pilots on furlough at the time of the merger were entitled to seniority rights based upon their dates of hire at US Airways, even if that would put hundreds of them ahead of West Pilots who were not on furlough.

48. The West Merger Committee argued that West Pilots who had been active at the time of the merger should be placed ahead of East Pilots who were on furlough at the time of the merger.

49. Subject to predefined conditions that protected its economic interests, US Airways agreed in advance to accept the outcome of the arbitration as the final resolution of this seniority integration dispute.

50. Mr. Nicolau issued his decision on May 1, 2007, in a document referred to as the Nicolau Award.

51. Mr. Nicolau rejected the date-of-hire integration advocated by the east Pilots because "merging active pilots with furloughees, despite the length of service of some of the latter, is not at all fair or equitable under any of the stated criteria."

52. The Nicolau Award created an integrated seniority list that placed approximately 500 of the most senior East Pilots at the top of the

list because they flew wide-body aircraft and no West Pilot flew such aircraft.

53. At the other end, the Nicolau Award placed all East Pilots who were on furlough when the airlines merged at the bottom of the list because they did not bring jobs to the merger.

54. The Nicolau Award blended the remainder of the two pilot lists.

55. On December 20, 2007, the Airline accepted the Nicolau Award integrated seniority list.

56. The East MEC appealed to ALPA's Executive Committee to overturn the Nicolau Award.

57. ALPA's Executive Committee ordered the East Pilots to implement the Nicolau Award.

58. In May 2007, East Pilot Stephen Bradford began to plan to create a new union (USAPA) to oust ALPA.

59. Upon information and belief, Mr. Bradford envisioned that East Pilots would control USAPA because they were in the majority.

60. Upon information and belief, Mr. Bradford reasoned that USAPA, unlike ALPA, would "protect" East Pilot interests over those of the West Pilots.

61. A representation election between USAPA and ALPA was held in early 2008.

62. USAPA won the election and began to represent a bargaining unit comprised of both pilot groups on April 18, 2008.

63. Later in 2008, USAPA presented, and to this day has not withdrawn, a date-of-hire seniority proposal to US Airways—a proposal that would put hundreds of West Pilots below the East pilots who were on furlough at the time of the merger.

2840096.5

64. USAPA consistently expresses that it has no intention to ever consider implementing the Nicolau Award list.

65. On September 4, 2008, six West Pilots filed an action in the District of Arizona, alleging that USAPA breached the duty of fair representation ("DFR") by refusing to implement the Nicolau Award list for improper reasons.

66. After a 10-day trial, a jury found that USAPA breached the DFR because its sole reason to frustrate implementation of the Nicolau Award was to benefit East Pilots, rather than to benefit the bargaining union as a whole.

67. The District Court (Judge Wake) ruled: "The West Pilots remain entitled to a union that will not abrogate the Nicolau Award without a legitimate purpose. Any waiver of that right must be consensual."

68. The District Court permanently enjoined and ordered USAPA to:
   a) Make all reasonable efforts to negotiate and implement a single CBA that will implement the Nicolau Award seniority proposal;
   b) Make all reasonable efforts to support and defend the Nicolau Award in negotiations with US Airways; and
   c) Not negotiate for separate collective bargaining agreements for the separate pilot groups.

69. The Ninth Circuit vacated the District Court order on the basis that the dispute was not ripe.

70. Notwithstanding finding lack of ripeness, the Ninth Circuit cautioned USAPA that unless it "bargain[ed] in good faith pursuant to its DFR, with the interests of all members—both East and West—in mind," there would be "an unquestionably ripe DFR suit, once a contract is ratified."

71. On Jul 27, 2010, US Airways filed a declaratory judgment action, claiming that it required guidance, *inter alia,* as to whether it would be liable if it entered into a collective bargaining agreement with USAPA that did not implement the Nicolau Award.

72. The District Court (Judge Silver) certified a class with these Plaintiffs as class representatives.

73. The District Court found that the Ninth Circuit's ripeness ruling constrained it from providing US Airways full guidance, stating that "[p]ursuant to the Ninth Circuit's decision, any claim for breach of the duty of fair representation will not be ripe until a collective bargaining agreement is finalized."

74. Nonetheless, the District Court provided important guidance by ruling that USAPA's date-of-hire "seniority proposal" would "breach its duty of fair representation" unless it were "supported by a legitimate union purpose."

75. The District Court provided additional guidance with the following rulings:

    a) "[D]ecertification of ALPA and the certification of USAPA did not change the binding nature of the Transition Agreement";

    b) "Discarding the Nicolau Award places USAPA on dangerous ground"; and

    c) "When the collective bargaining agreement is finalized individuals will be able to determine whether USAPA's abandonment of the Nicolau Award was permissible, *i.e.,* supported by a legitimate union purpose."

76. USAPA did not appeal.

77. AMR filed a Chapter 11 petition on November 29, 2011.

2840096.5

78. On or about February 14, 2013, the two Defendants, APA and AMR entered into the *Memorandum of Understanding Regarding Contingent Collective Bargaining Agreement* (the "MOU") that set the stage for a merger between US Airways and AMR.

79. The MOU was ratified by 75% of USAPA's membership on February 8, 2013.

80. The MOU provides substantially improved wages to the East Pilots.

81. The MOU provides that seniority integration between pilots of US Airways and American will be done according to the McCaskill-Bond Amendment to the Federal Aviation Act.

82. The MOU does not address the Nicolau Award or any aspect of East-West seniority integration.

83. Remaining aspects of the pilot collective bargaining agreement that will be used in the merger will be determined and implemented without requiring approval by USAPA or additional ratification by its members.

84. Upon information and belief, USAPA considers itself absolutely bound to repudiate the Nicolau Award by its constitutional date-of-hire agenda.

## CLASS ACTION ALLEGATIONS

85. Plaintiffs bring this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on their own behalf and on behalf of the West Pilot Class of all persons similarly situated.

86. The West Pilot Class is defined as: All pilots who are on the America West seniority list currently incorporated into the West CBA.

2840096.5

87. Because the West Pilot Class has approximately 1600 members, the class is so numerous that joinder of all such persons is impracticable.

88. There exist common questions of law and fact affecting the members of the putative West Pilot Class.

89. The standing of the named Plaintiffs to enjoy and protect the seniority rights established by the Nicolau Award arise from their status as West Pilots and is, therefore, the same as that for any other West Pilot.

90. The named Plaintiffs will fairly and adequately represent the interests of the putative West Pilot Class because:

    a) They have moral and financial support from many West Pilots;

    b) One or more of them will suffer the kind of injuries that will be suffered by other West Pilots if seniority integration is done using USAPA's date-of-hire seniority list;

and

    c) They each have a good understanding of the issues underlying this litigation and have demonstrated a willingness to invest the necessary time and efforts to fulfill their duties as representative parties.

91. Material questions of law and fact arising from this action are common to the named Plaintiffs and other members of the putative West Pilot Class; these include the following:

    a) Whether the named Plaintiffs and other West Pilots have standing to obtain the relief requested in this action;

2840096.5

  b) Whether the MOU violates USAPA's duty of fair representation;

  c) Whether USAPA and US Airways are subject to injunctive remedy to prevent seniority integration that does not implement the Nicolau Award list; and

  d) Whether under common benefit doctrine USAPA must pay Plaintiffs' reasonable litigation expenses that have been incurred enforcing USAPA's duty of fair representation, including attorneys' fees?

92. All West Pilots have the right, under the RLA, to fair union representation.

93. All West Pilots have an interest in USAPA adhering to its duty of fair representation by adopting and promoting the arbitrated compromise of a seniority dispute that all had agreed would be final and binding.

94. Plaintiffs have retained counsel experienced in class action litigation to prosecute these claims.

95. This action merits class action treatment because the factors enumerated herein satisfy the requirements of Rule 23(a) and Rule 23(b)(1)(A).

## CAUSES OF ACTION

**I. Claim One: Breach of the Duty of Fair Representation**

96. Plaintiffs re-allege each and every allegation set forth above as if fully set forth herein.

97. Pursuant to the duty of fair representation, USAPA must have a legitimate union purpose to use anything other than the Nicolau Award list to integrate East Pilots and West Pilots.

2840096.5

98. USAPA does not have a legitimate union purpose to use anything other than the Nicolau Award list to integrate East Pilots and West Pilots.

99. USAPA, therefore, breached the duty of fair representation by entering into the MOU with the firm intention of using a date-of-hire seniority list rather than the Nicolau Award list.

100. Plaintiffs are entitled to a declaratory judgment to that effect and to other remedy sought below.

## II.    Claim Two: Breach of Transition Agreement by US Airways

101. Plaintiffs re-allege each and every allegation set forth above as if fully set forth herein.

102. The Transition Agreement had an implied covenant of good faith and fair dealing.

103. The Transition Agreement envisioned a "Single Agreement" that would be made by US Airways and USAPA that would replace material terms in the separate contracts governing the employment of the West Pilots (the West CBA) and the East Pilots (the east CBA).

104. That implied covenant constrained the terms of the Single Agreement such that it could not provide materially improved wages for US Airways pilots (East and West) without also providing terms needed to integrate pilot operations consistent with the Transition Agreement.

105. The MOU is a single agreement that provides materially improved wages for US Airways pilots (East and West).

106. The MOU fails to provide terms needed to integrate pilot operations.

107. The Transition Agreement requires that pilot seniority will be implemented using to the integrated seniority list created according to ALPA Merger Policy and accepted by US Airways – the Nicolau Award list.

13

108. The MOU fails to provide that pilot seniority will be implemented using the Nicolau Award list.

109. Based on the forgoing, adopting the MOU is a breach of the Transition Agreement implied covenant.

110. Despite vigorous protests by the West Pilots, USAPA refuses to assert breach of the Transition Agreement implied covenant.

111. This Court, consequently, has hybrid jurisdiction to hear this implied covenant claim that would otherwise be a minor dispute subject to system board arbitration.

112. Plaintiffs are entitled to a declaratory judgment that the MOU is a breach of the Transition Agreement implied covenant by US Airways.

### III.  Claim Three: Attorneys' Fees

113. Plaintiffs re-allege each and every allegation set forth above as if fully set forth herein.

114. USAPA has several million dollars in reserve collected as dues and agency fees from all US Airways Pilots.

115. Plaintiffs brought this action and the 2008 action and appeared as defendants in the 2010 action to vindicate the right of all US Airways pilots to fair representation by USAPA.

116. By obtaining the rulings in the 2008 and 2010 actions and by prevailing in this action, Plaintiffs conferred a substantial benefit on all US Airways Pilots.

117. Under common benefit doctrine, the expenses of achieving those benefits should, in all fairness, be spread among all those who so benefitted.

118. The expenses of achieving those benefits would be fairly spread among all US Airways Pilots if paid by USAPA.

14

2840096.5

119. The Court should, therefore, make an award in favor of Plaintiffs and against USAPA for all reasonable litigation expenses, including attorneys' fees incurred bringing this action, incurred by Plaintiffs in the actions noted above.

## IV. Prayer for Relief

Plaintiffs respectfully ask the Court for the following relief:

120. Judgment that USAPA violated the duty of fair representation by, among other things, entering into a contract, the MOU, that provided substantially better wages for East Pilots without requiring their agreement to implement the Nicolau Award list;

121. Judgment that USAPA is continuing to violate the duty of fair representation by insisting that it will use a date-of–hire seniority list rather than the Nicolau Award list;

122. Judgment that US Airways, with the consent of USAPA, is in breach of the implied covenant of the Transition Agreement;

123. An injunction requiring Defendants to conduct seniority integration according to the MOU procedures but using the seniority order in the Nicolau Award list to order the US Airways pilots; and

124. Judgment awarding Plaintiffs the reasonable litigation expenses, including attorneys fees, incurred since 2008 protecting the fair representation rights of the US Airways Pilots.

Dated this 6th day of March, 2013.

**POLSINELLI SHUGHART, PC**

By  /s/ *Andrew S. Jacob*
_____
Marty Harper
Andrew S. Jacob
Jenifer Axel
CityScape
One East Washington St., Ste. 1200
Phoenix, AZ 85004
*Attorneys for West Pilots*

2840096.5

## VERIFICATION

STATE OF ARIZONA ) 
         ) ss 
County of Maricopa )

  Roger Velez, a Plaintiff In this action, being first duly sworn, upon his oath, deposes and says:

  I, Roger Velez verify this Complaint on behalf of the other named Plaintiffs in this matter and declare, under penalty of perjury, pursuant to A.R.S. § 13-2702, that I have read the foregoing Complaint, and know the contents thereof; and the matters set forth therein appear to be true to the best of my own knowledge and information, except to the matters stated herein on information and belief, and that as to those matters, I believe the complaint to be true.

Dated this 6th day of March, 2013.

*/s/ Roger J. Velez*

  SUBSCRIBED AND SWORN TO before me this 6th day of March, 2013.

*/s/ Patricia Klank*
Notary Public

My commission expires: 7/3/2015

PATRICIA KLANK
Notary Public - Arizona
Pinal County
My Comm. Expires Jul 3, 2015

2840096.5