**PATRICK J. SZYMANSKI (*pro hac vice*)**
**PATRICK J. SZYMANSKI, PLLC**
1900 L Street, NW, Ste 900
Washington, DC  20036
Telephone: (202) 721-6035
szymanskip@msn.com

**BRIAN J. O'DWYER (*pro hac vice*)**
**GARY SILVERMAN (*pro hac vice*)**
**JOY K. MELE (*pro hac vice*)**
**O'DWYER & BERNSTIEN, LLP**
52 Duane Street, 5th Floor
New York, NY 10007
Telephone:  (212) 571-7100
bodwyer@odblaw.com
gsilverman@odblaw.com
jmele@odblaw.com

**SUSAN MARTIN (AZ#014226)**
**JENNIFER KROLL (AZ#019859)**
**MARTIN & BONNETT, P.L.L.C.**
1850 N. Central Ave. Suite 2010
Phoenix, Arizona 85004
Telephone: (602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com

Attorneys for US Airline Pilots Association

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Don Addington, *et. al.*, | Case No.:  CV-13-00471-PHX-ROS |
| Plaintiffs, | **US Airline Pilots Association's Supplemental Brief as Directed by the Court at May 14, 2013 Hearing** |
| v. | |
| US Airline Pilots Association, *et. al.*, | |
| Defendants. | |

Defendant US Airline Pilots Association ("USAPA") submits this Memorandum of Law on the following issues as directed by the Court at the May 14, 2013 hearing:

**1.** Whether the Civil Aeronautics Board ("CAB") appointed separate representative status to employees from their certified bargaining representative in a Section 3 and 13 seniority integration proceeding based on a purported divergence of interests between those employees and the bargaining representative; and if so, whether the Court may rely upon certain decisions of the CAB prior to passage of the 1978 Airline Deregulation Act to accord to the plaintiffs here the right to participate as a party in the Section 3 and 13 seniority integration proceeding among the pilots of American Airlines represented by the APA and among the pilots of US Airways represented by USAPA.

**2.** Whether the parties will stipulate to the facts that are relevant for the Court to determine whether or not there is a breach of the duty of fair representation.

**3.** If the Court finds such a breach, what the remedy could or should be.

I

THE APPLICABILITY OF PRE 1978 CAB AUTHORITY
ON THE MCCASKILL-BOND PROCESS

A.    Under CAB precedents only the exclusive NMB bargaining representative is afforded party status in seniority integration proceedings, and the CAB repeatedly rejected efforts by groups of employees to obtain separate status.

Contrary to the representations of counsel for US Airways and the plaintiffs, the CAB never granted separate party status in a Section 3 and 13 seniority integration proceeding to a separate group of unionized employees.[1]  Rather, the CAB repeatedly

---

[1] The McCaskill-Bond Amendment provides that when two or more air carriers are involved in a "covered transaction" resulting in the combination of crafts or classes that are subject to the RLA, "sections 3 and 13 of the labor protective provisions imposed by the Civil Aeronautics Board in the Allegheny-Mohawk merger . . . shall apply to the integration of covered employees of the covered air carriers."  49 U.S.C. § 42112(a); *see also Committee of Concerned Midwest Flight Attendants v. Int'l Brotherhood of Teamsters,* 662 F.3d 954, 956-57 (7th Cir. 2011).  The Labor Protective Provisions ("LLPs") require that a carrier make provisions "for the integration of seniority lists in a fair and equitable manner," which includes negotiation with union representatives and binding arbitration.  Allegheny-Mohawk Labor Protective Provisions Section 3 and 13, as published at 59 C.A.B. 45.

1

stated its "well-settled" policy that the certified bargaining representative under the Railway Labor Act for a unionized craft or class of employees was the employees' representative for purposes of the Section 3 and 13 process.

In *National Airlines Acquisition,* 94 C.A.B. 433 (1982), the International Brotherhood of Teamsters ("IBT") was the exclusive bargaining representative of the combined employee group of Pan American Airways clerical employees following the merger of Pan Am and National Airlines ("National").  The IBT negotiated with Pan Am an integrated seniority list covering the merged Pan Am/National Airlines clerical workforce. Thereafter a group of former National employees, styling themselves as P.A.I.N. (Pan Am In National), petitioned the CAB to undo the seniority integration agreement reached between Pan Am and the IBT.  P.A.I.N. also sought an order from the CAB granting them party status and ordering an arbitration among Pan Am, IBT and P.A.I.N.  The CAB rejected the employees' petition, stating:

> Our policy on seniority integration, in the circumstances of this case, has been well-settled for over 20 years. [T]he Board in approving a merger or similar transaction involving the transfer of employees from one company to another * * * charge[s] the receiving company with the duty and responsibility of making provision for the integration of the seniority lists in a fair and equitable manner, utilizing when applicable the *collective bargaining procedures contemplated by the Railway Labor Act. * * * Where the members of a craft or class are represented by a labor organization the Board expects that labor organization to perform its statutory function of representing such craft or class and to enter into prompt negotiations with the company looking toward the establishment of an integrated seniority list by voluntary agreement. *Where this has been done, it would be with the greatest reluctance that the Board would inject itself into the contractual relationships between the carrier and the employee group, and only on a showing of bad faith, or deliberate attempt to subvert the Board's order, or other compelling circumstances. Delta-C&S Seniority List*, 29 C.A.B. 1347, 1349 (1959), *aff'd sub nom. Outland v. CAB*, 284 F.2d 224 (D.C. Cir. 1960) (emphasis added).

*National Airlines Acquisition*, 94 C.A.B. 433, 436, 1982 WL 35259, at *3 (Mar. 4, 1982) (emphasis in original).

As particularly applicable to the instant matter, the CAB applied its policy of recognizing the bargaining representative under Section 3 despite claims by employee groups that they were minority factions and would not be represented fairly by the union. Thus, in *National Airlines Acquisition*, the CAB refused to recognize P.A.I.N. despite the claim it had no separate representation in the seniority integration negotiations between IBT and Pan Am and that IBT was dominated by the interests of former Pan Am employees who favored a date of hire integration. In so doing, the CAB affirmed the longstanding rule that unions are afforded a wide range of reasonableness and complete agreement among all affected workers is unexpected:

> Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion. *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338 (1953). [citations omitted]

In another National Airlines Acquisition case involving pilots and flight engineers, the CAB observed,

> The Flight Engineers' International Association ("FEIA") was the certified collective-bargaining agent, under the Railway Labor Act, for flight engineers at National and Pan American through its respective airline chapters. The Air Line Pilots Association, International ("ALPA"), through its master executive councils at each airline, was the agent for the carriers' pilots. *Such agents are the appropriate representatives of employees affected by an acquisition or merger for purposes of bargaining with the combined carrier about integrated seniority.*

*National Airlines Acquisition,* 95 C.A.B. 584, 1982 WL 35318, at n.1 (Apr. 15, 1982) (emphasis added).

The CAB's recognition of the certified bargaining representative of a craft or class as the representative in seniority integration disputes was recited in the series of cases

3

associated with the Allegheny Airlines-Mohawk Airlines merger in which the CAB formally adopted its body of labor protective provisions ("LPPs").  In reviewing a petition by a former Mohawk pilot challenging the seniority integration award that resulted from the internal merger policy of ALPA, the CAB stated,

> Section 3 of the "labor protective provisions" in the instant Allegheny-Mohawk merger approval order charged Allegheny with the duty to integrate the Allegheny and Mohawk individual seniority lists in a fair and equitable manner, including "agreement through collective bargaining between the carriers and the representatives of the employees affected" (n. 3 supra).  *Since ALPA was the certified bargaining representative under the Railway Labor Act for both Allegheny and Mohawk pilots before the merger, the LPPs clearly required Allegheny, the surviving company, to treat with ALPA acting in behalf of all pilots affected by the merger for purposes of integrating their seniority.*

*Allegheny-Mohawk Merger Case,* 1979 CAB LEXIS 48, 23 (emphasis added).

The CAB's policy arose from its recognition that the NMB determined the scope of a craft or class and the identity of the employees' representative. "Under the Railway Labor Act, the National Mediation Board (NMB) has exclusive jurisdiction to determine class or craft composition for airline employee bargaining units and representational rights." *National Acquisition,* 97 C.A.B. 565, 566, 1982 WL 35436, at *1 (Aug. 13, 1982).

That the CAB recognized the NMB-certified bargaining agent as the employees' representative for the seniority integration process is reflected in the fact that the CAB reviewed seniority integration agreements (or arbitration awards) based on a duty of fair representation standard; a standard that emanates only from the *exclusive* representative status of the NMB-certified bargaining unit representative. *McNamara-Blad v. Assoc. of Prof. Flight Attendants,* 275 F.3d 1165, 1169 (9th Cir. 2002) ("The duty of fair representation arises from a union's statutory role as the exclusive bargaining representative for a unit of employees.").  Neither the CAB nor any other federal entity apart from the NMB could establish the exclusive representative status that then creates the duty of fair representation; only certification by the NMB creates that exclusive

representative status under the RLA and the corresponding duty of fair representation.

Further, in the National Airlines Acquisition proceeding involving pilots and flight engineers, the CAB rejected efforts by a group of 510 furloughed Pan Am pilots, styling themselves the "Janus Group," to obtain separate party status in the Section 3 and 13 proceeding on the purported ground that the certified representatives did not represent their interests. *National Airlines Acquisition,* 84 C.A.B 408, 1979 WL 49136 (Oct. 24, 1979)**.** The CAB rejected the request for separate party status on the grounds that it asked the CAB to overturn the NMB-established representation structure and effectively establish a separate bargaining unit for the pilots. The CAB also rejected the Janus Group's request that it impose a particular seniority integration, stating:

> We recognize that the furloughed airmen's position vis-a-vis seniority is uncertain. We believe that we must leave to the unions, however, the task of finding an equitable solution to this problem. Our grant of independent arbitration rights to a group already covered by the LPPs and entitled to be represented in the seniority list integration proceedings would interfere with the established representation format and, in effect, set up another bargaining unit. We do not think that the Board should tamper with and inevitably complicate the procedures used to negotiate seniority list integration by setting up a third force. Moreover, we would not want to dictate, by imposing the "date of hire" language suggested by the Janus Group, the manner in which seniority is to be integrated. Both modifications would undoubtedly affect issues and procedures about which we have too little information or experience to make sound judgments. We therefore deny the modifications sought by the Janus Group. In doing so, however, we urge the union or unions representing the Janus Group airmen to make every effort to see that they are given extensive consideration, and that their interests are fairly and fully represented.

*National Airlines Acquisition*, 84 C.A.B. at 476-77, 1979 WL 49136, at *32.

As shown by the foregoing, pre-deregulation CAB precedents do not provide authority for this Court to appoint separate representatives for former America West pilots in the Section 3 and 13 proceeding. The CAB uniformly rejected such efforts. To the contrary, the CAB itself identified in its post-deregulation decision in *National Airlines Acquisition*, that it had only granted party status to an interest group that represented *all* of the craft or class of one of the merging carriers and only where the craft or class would otherwise be unrepresented in collective bargaining following the merger.

5

1
2
3
4
5
6
7
8

Petitioners state that they were entitled to separate representation based on applicable Board precedent.  The argument, however, is premised on their misguided reliance on *Braniff-Mid-Continent Merger Case, 17 C.A.B. 19 (1953); American-TCA Merger Case, 57 C.A.B. 581 (1971);* and *Delta-Northeast Merger Case, 63 C.A.B. 700 (1973)* and Order 76-9-129, September 23, 1976.  In Braniff-Mid-Continent and American-TCA, the Board accorded party status to an interest group which represented the entire employee complement of a particular craft for one of the merging carriers. *Those employee complements, moreover, were not being represented by any other collective-bargaining representative after the merger.*

9   94 C.A.B. 433 at n.5, 1982 WL 35259, at *4 (emphasis added).

10   The narrow exception identified by the CAB for groups of employees not

11   represented by any union —which was never invoked by the CAB after adoption of the

12   Airline Deregulation Act—has no application here.  The plaintiffs, purporting to be

13   representatives of a *portion* of US Airways pilots, plainly do have a certified bargaining

14   representative and plainly do not represent all of the US Airways pilots.  The former

15   America West pilots are now part of a single US Airways pilot craft or class that is

16   represented by a union certified by the NMB as the exclusive bargaining representative.

17   It is the American Airlines pilot craft or class and the US Airways pilot craft or class, not

18   an America West pilot craft or class, who are the subjects of the Section 3 and 13

19   proceeding that will occur.  These pilots are currently represented by USAPA and will

20   continue to be represented for collective bargaining after US Airways merges with

21   American Airlines.  Just as in the National Airlines and PanAm merger the CAB

22   repeatedly rejected appeals by groups of employees for separate party status from their

23   certified bargaining representative based on an alleged conflict of interests, the effort here

24   by this group of former America West pilots cannot be granted by the Court.

25   B.   The McCaskill-Bond Amendment neither incorporates the authority of the CAB nor provides for employees who are already represented by a bargaining representative to participate in the integrated seniority process.

26

27   Nothing in the text of the McCaskill-Bond Amendment addresses the right of

28

6

employees to representation in a seniority integration proceeding. Similarly, it makes no mention of incorporating the authority of the CAB under the Amendment. It is the text of the statute, and not inferences drawn by resort to decisions of the CAB, that determines the rights of employees under the statute.

In the only court of appeals decision to date to have considered the McCaskill-Bond Amendment, *Committee of Concerned Midwest Flight Attendants v. Int'l Brotherhood of Teamsters,* 662 F.3d 954 (7th Cir. 2011), the Seventh Circuit overturned a district court decision that had relied on interpretations of the LPPs by the CAB to determine that the plaintiffs, who were former Midwest flight attendants, were not entitled to the protections of McCaskill-Bond. The district court had concluded that the CAB did not impose LPPs to address a carrier's economic failure that resulted in cessation of operations, but only to address the adverse effects of a merger.

On appeal, the Seventh Circuit rejected the district court's application of CAB precedent in its interpretation of the statute. It held that it is the language of the McCaskill-Bond statute itself that is controlling as to its application. Rejecting the district court's conclusion that the fact Midwest went out of business because of economic failure and not a merger deprived the Midwest flight attendants of the protections of McCaskill-Bond, the court held, "[n]othing in the text of the statute asks whether one of the merging carriers is bankrupt and about to vanish when the transaction closes…[W]hat those 'words would mean in the mouth of a normal speaker of English, using them in the circumstances in which they were used' is that they govern all transactions in which an acquisition is followed by joint operations, whether or not one carrier was on the brink of collapse." 662 F.3d at 957-58.

There is no judicial authority for using CAB authority to fill in alleged holes in the statute or to expand the McCaskill-Bond Amendment beyond the language of its text. The statute nowhere empowers a court to appoint representatives for employees in a seniority integration proceeding. Indeed, the statute plainly incorporates NMB determinations of the questions of craft or class and representation through its language

conditioning imposition of the Section 3 and 13 seniority integration process to "covered transaction involving two or more covered air carriers that results in the combination of crafts or classes that are subject to the Railway Labor Act (45 U.S.C. 151 et seq.)."  In *Committee of Concerned Midwest Flight Attendants,* the Seventh Circuit cited to the NMB's determination of a single craft or class among the affected flight attendants in determining that the transaction was covered by McCaskill-Bond. 662 F.3d at 957.

The two exceptions established under subsection §117(a) of the Amendment also reflect that Congress intended nothing more than to ensure seniority integration protections to be administered by employees' collective bargaining representative if they have one.  Those exceptions provide:

> (1) if the same collective bargaining agent represents the combining crafts or classes at each of the covered air carriers, that collective bargaining agent's internal policies regarding integration, if any, will not be affected by and will supersede the requirements of this section; and
> (2) the requirements of any collective bargaining agreement that may be applicable to the terms of integration involving covered employees of a covered air carrier shall not be affected by the requirements of this section as to the employees covered by that agreement, so long as those provisions allow for the protections afforded by sections 3 and 13 of the Allegheny-Mohawk provisions.

49 U.S.C. § 42112, note, § 117(a).  Both exceptions contemplate seniority integration is administered by the "collective bargaining agent" of the affected employee groups.

Nothing in the McCaskill-Bond Amendment overturns the well-settled authority of *Switchmen's Union* and its progeny that federal courts have no authority to resolve questions of representation among employees subject to the RLA.  CAB authority, even if it supported such relief, may not be imported via the McCaskill-Bond Amendment to overturn the exclusive authority of the NMB to determine such matters.  To do so would be unprecedented and, to quote the CAB, "would interfere with the established representation format and, in effect, set up another bargaining unit." *National Airlines Acquisition,* 84 CAB at 476, 1979 WL 49136, at *32.

C.   The MOU provides that the protections of Sections 3 and 13 of the LLPs apply to the integrated seniority process.

As noted above, §117(a)(2) provides that the McCaskill-Bond Amendment does not affect the requirements of collective bargaining agreements for seniority integration if those agreements provide the protections of Sections 3 and 13 of the Allegheny-Mohawk LPPs. The MOU among American, US Airways, APA and USAPA establishes in its Section 10 a seniority integration process "consistent with McCaskill-Bond." MOU at 6.

Section 10 establishes that the seniority integration process must be "consistent with" the requirements of McCaskill-Bond, that is, following the Section 3 and 13 process. The McCaskill-Bond Amendment cannot be interpreted to overturn the certified bargaining representative status of the union parties to the MOU in the seniority integration process established under it.

D.   The Court has no authority to grant party status to the West Pilots: such a ruling conflicts with the NMB determinations of a single pilot craft or class at US Airways and its certification of USAPA as that representative.

"Under the Railway Labor Act, the National Mediation Board (NMB) has exclusive jurisdiction to determine class or craft composition for airline employee bargaining units and representational rights." *National Airlines Acquisition,* 97 C.A.B. at 566, 1982 WL 35436, at *1. The CAB recited this well-settled principle over 30 years ago in addressing a petition under Sections 3 and 13 of its LPPs. The Supreme Court much earlier held that federal courts have no authority to resolve the question of who will represent employees under the RLA since Congress vested that exclusive authority in the NMB. "The National Mediation Board ("NMB") has exclusive jurisdiction to determine union representation disputes under the RLA; an NMB representation determination is essentially unreviewable in federal court." *McNamara-Blad v. APFA,* 275 F.3d at 1170, (*citing Switchmen's Union v. NMB,* 320 U.S. 297, 303-07, 64 S. Ct. 95 (1943)). *See also America West Airlines v. National Mediation Board,* 119 F.3d 772, 775 (9th Cir. 1997) ("The RLA provides that when there is a dispute as to the identity of the employee's

9

representative, the NMB should investigate and certify the identity of that representative."). Federal courts, therefore, have no authority to determine the proper representative for employees covered by the RLA. That determination lies exclusively with the NMB, which has already settled the question among US Airways pilots.

Moreover, allowing the West Pilots a separate seat at the table in the McCaskill-Bond process would offend general labor law principles and specific RLA precedent regarding a union's ability, as the exclusive representative of a group of employees, to make decisions and enter into agreements on behalf of that group of employees without judicial interference. At its heart, this case is an internal union dispute between plaintiffs and USAPA. As such, this Court's involvement in this dispute should be extremely limited. *See Local 1052, United Broth. of Carpenters and Joiners of Am. v. Los Angeles County Dist. Council of Carpenters*, 944 F.2d 610, 613 (9th Cir. 1991) (stating that "[t]here is a well-established federal policy of avoiding unnecessary interference in the internal affairs of unions …"). *See Shea v. Int'l Ass'n of Machinists and Aerospace Workers*, 154 F.3d 508, 517 (5th Cir. 1998) (applying this principle to DFR claims arising under the RLA).

Any order by this Court allowing a minority faction of USAPA to have a separate seat at the table in McCaskill-Bond proceedings would fly in the face of the above-referenced principles of judicial non-interference in internal union affairs and exclusivity of bargaining representative. After the merger of old US Airways and America West Airlines in 2005, the NMB determined that the merged airline had single carrier status, and, therefore, certified one union to represent the pilots of both old US Airways and America West. Since April 2008 and continuing to present, USAPA has been certified by the NMB as the exclusive representative of both pilot groups. As such, an order mandating that another entity or group be empowered to represent the West Pilots in McCaskill-Bond proceedings would be contrary to federal courts' long standing policy of extending deference to the actions of the exclusive representative of a group of employees. *See Hendricks v. Airline Pilots Ass'n Int'l*, 696 F.2d 673, 677 (9th Cir. 1983)

("Under the collective bargaining system, selection of a union as the bargaining representative substantially reduces the ability of individual employees to deal directly with their employer.  Hence, federal labor policy 'extinguishes the individual employee's power to order his own relations with his employer and creates a power vested in the chosen representative to act in the interests of all employees.'") (quoting *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180, 87 S.Ct. 2001, 2006 (1967)).

## II

### WHETHER THE PARTIES WILL STIPULATE TO FACTS RELEVANT FOR THE COURT TO DETERMINE WHETHER THERE IS A BREACH OF THE DUTY OF FAIR REPRESENTATION.

To answer the Court's specific question, defendant USAPA is not prepared to stipulate to the all of the facts contained in plaintiffs' previously submitted Statement of Facts (Doc. 14).  Nor is USAPA in a position to respond definitively to the proposed stipulated facts received from plaintiffs on the date of this filing due to time constraints and unavailability of all necessary parties.

That said, and consistent with the Court's focus on events after entry of the October 11, 2012 Order and Judgment, USAPA is prepared to work with the other parties in an attempt to arrive at a joint statement that contains both facts that can be stipulated to and facts that remain in contention with respect to the Preliminary Injunction application.[2]  Counsel for USAPA communicated with plaintiffs' counsel and offered to make that initial exchange early the week of May 20, 2013.  This offer was declined, upon the grounds that plaintiffs believe the Court directed the parties to file the stipulation of facts herewith.  USAPA does not interpret the Court's directive to provide for such a filing on this date and stands by its offer to attempt to eliminate or narrow the

---

[2] It is noted there is a pending motion to consolidate this hearing with a trial on the merits (Doc. 60), which USAPA has opposed and in which USAPA has indicated discovery is required.  Thus, and fundamentally, there is uncertainty as to the nature of the proceeding for which a stipulation is being considered.  Moreover, USAPA does not consent to converting this action to a motion for summary judgment without discovery and in light of the pending motions to dismiss.

disputed facts relevant on the motion for Preliminary Injunction by stipulating to facts to the extent possible.[3]

## III

### IF THIS COURT FINDS THAT USAPA BREACHED ITS DFR TO PLAINTIFFS, WHAT IS THE REMEDY?

In considering any potential remedy for a breach of duty of fair representation the courts are governed by certain fundamental principles of labor law. The first is the parties' freedom to contract.  As the Supreme Court stated in overturning an NLRB decision ordering an employer to adopt a specific contract term:

> One of these fundamental policies is freedom of contract. While the parties' freedom of contract is not absolute under the Act, allowing the Board to compel agreement when the parties themselves are unable to agree would violate the fundamental premise on which the Act is based–*private bargaining under governmental supervision of the procedure alone,* without any official compulsion over the actual terms of the contract.

*H. K. Porter Co. v. N. L. R. B.*, 397 U.S. 99, 108 (1970) (emphasis added).  *See also Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 74 (1991); *East Bay Chevrolet v. NLRB* 659 F. 2d. 1006, 1009 (9th Cir.1981).  Accordingly, courts do not dictate the terms of proposals the parties must bargain for or agree to.  The second governing principle is that in reviewing a union's actions in collective bargaining, courts do not their substitute their judgment for that of the union. *O'Neill*, 499 U.S. at 65 ("Congress did not intend judicial review of a union's performance to permit the court to substitute its own view of the proper bargain for that reached by the union").  Similarly, a third guiding principle is that "Generally the judiciary will refrain from interfering with the internal affairs of the union." *Air Wisconsin Pilots Prot. Comm. v. Sanderson*, 87 C 3382, 1989 WL 58273

---

[3]   The foregoing is without waiver of USAPA's previously stated position that it is entitled to discovery depending on the nature of the claims in issue.  As set forth in USAPA's Opposition to Plaintiffs' Motion to Consolidate (Doc. 83), the areas of inquiry will include US Airways' current financial and operational conditions, circumstances showing insistence upon using the Nicolau Award based on a claim under the duty of fair representation would be entirely unreasonable and inequitable, the effect of the MOU on former America West Pilots, and plaintiffs' efforts to obstruct USAPA in fulfilling its duties.

(N.D. Ill. May 31, 1989) *aff'd,* 909 F.2d 213 (7th Cir. 1990) (citations omitted). And finally, as appropriate here, is the principle that the union is and must be the exclusive representative for all of the employees.  The union's status as exclusive bargaining representative may not be modified by the courts.  *McNamara-Blad v. APFA,* 275 F.3d at 1170 ("The National Mediation Board ("NMB") has exclusive jurisdiction to determine union representation disputes under the RLA; an NMB representation determination is essentially unreviewable in federal court" *citing Switchmen's Union v. NMB,* 320 U.S. 297, 303-07, 64 S. Ct. 95 (1943))*.*  Rather, its exclusive status, and "undoubted broad authority . . . in the negotiation and administration of a collective bargaining contract," is the *quid pro quo* for its duty of fair representation.  *Humphrey v. Moore*, 375 U.S. 335, 342, 84 S.Ct. 363, 368 (1964).

Based on these governing principles, courts are barred from fashioning a remedy for a breach of the DFR that dictates the terms of the negotiations or revises the union's lawful procedures for selecting representatives to be present either in negotiations or at arbitration.  In other words, the relief requested by plaintiffs in the form of a mandatory injunction to negotiate for the Nicolau Award or to allow plaintiffs to inject themselves into negotiations with the APA or to participate in a McCaskill-Bond arbitration, is completely beyond the scope of relief courts can provide.

In dismissing *Addington I* the Ninth Circuit found the DFR claim speculative because none of the pilots could "actually be affected" by any seniority proposal until it was formally adopted. *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1180-81 (9th Cir. 2010).  Nor could the *Addington I* plaintiffs satisfy the requirement to show direct and immediate hardship.  Even though they argued they would not have been furloughed if the Nicolau Award had been incorporated into a CBA, the Ninth Circuit found the claim of harm speculative because (1) there was no certainty a CBA incorporating the seniority regime sought by the plaintiffs would ever be effectuated and

13

(2) because "USAPA's final proposal may yet be one that does not work the disadvantages Plaintiffs fear, even if that proposal is not the Nicolau Award." *Id.* at 1181. All of the same factors are still present here making the instant claim unripe and any relief inappropriate.[4]  As this Court stated in its decision in the Declaratory Judgment action, the Ninth Circuit likewise made clear that USAPA remains "free to bargain in good faith …with the interests of all pilots East and West in mind…" *Id.* at 1181 n. 1.

As USAPA reaffirmed at the May 14, 2013 hearing, it will make every effort to negotiate on seniority integration with the interests of all US Airways pilots in mind. At present, there is not even an appointed USAPA Merger Committee (the committee charged to carry out negotiations on seniority with American pilots if the merger goes through).  Since the committee has not even been formed, no West Pilots have yet been appointed and any proposals for seniority integration negotiations have yet to be formulated.  USAPA has consistently maintained it will protect and represent the interests of the entire bargaining unit – East and West.  Regardless, as the Ninth Circuit made clear in *Addington I*, mere statements of future intentions do not state a claim for DFR. *Id.* at 1181 n. 5.  In any event, the record is clear that USAPA has never advocated for strict date of hire seniority and it has not renounced its duty to negotiate in good faith for fair and equitable seniority integration.  If negotiations with the American pilots are fruitful, the agreement reached must be ratified by USAPA members. If the matter proceeds to a tri-partite arbitration, such a proceeding could take up to two years before a decision is rendered.[5]  Given the uncertainties of the timing and effectuation of the merger process, the fact that USAPA will need to evaluate and respond to proposals it

---

[4] In rejecting the dissent's analysis, the Ninth Circuit noted that the plaintiffs had only been able to identify a single out-of-circuit decision from 1955 in which a court had allowed a DFR claim to proceed before a contract had been executed and found the case distinguishable and unpersuasive.  Instead, it cited authorities that make clear that a DFR claim does not accrue "when the union merely announces its intention to breach its DFR in the future." *Id.* at 1181 n. 5, and, citing *O'Neill,* noted that there must be a final product before there can be DFR claim.  *Id.* at 1179-81

[5] *See* Doc. 14-3, at 61, ¶10.a.

will receive from APA (which has a significantly larger pilot group) following approval of the POR and the potential operational changes affecting the parties following the merger, USAPA's need to have the ability to adapt its strategies and proposals to changing circumstances is imperative. All of this also assumes a merger is actually completed with American. Coupled with the complete lack of clarity concerning what possible breach of its DFR the Court could find based on the current facts, USAPA submits it is premature and not appropriate to consider any remedy in the event this Court finds USAPA to have breached its DFR, but that any such remedy must be governed by the principles set forth above.

USAPA also objects to the notion of remedy for several reasons.  Fundamentally, any remedy must not only follow a finding of wrongdoing, but the relief afforded by the remedy must be related to that finding. As demonstrated in USAPA's motion papers, in the cases of a mandatory injunction, no injunction should issue "unless the facts and law clearly favor the moving party" *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994). Further, any mandatory injunction would be incredibly disruptive of USAPA's legitimate union affairs and inflict harm far outweighing any benefit to be gained. *Anderson v. United States*, 612 F.2d 1112, 1115-16 (9th Cir. 1979). Courts must be extremely cautious in fashioning a remedy under these circumstances, and this is particularly true when a proposed remedy goes beyond preserving the status quo.  *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984).

Thus, aside from the fact that USAPA is clear there has been no breach of its DFR, in the first instance, it is not possible to posit the remedy because plaintiffs continue to shift the alleged basis of their latest DFR claim. The complaint asserts that "USAPA . . . breached the duty of fair representation by entering into the MOU with the firm intention of using a date-of-hire seniority list rather than the Nicolau Award list."  (Compl., ¶99) As discussed in its motion to dismiss, that claim is not ripe for the same reasons that plaintiffs' first and second DFR claims against USAPA were not ripe – that is, not until there is a final merged seniority integration list with US Airways and American - does

plaintiffs' DFR claim as to USAPA's conduct during negotiations for that list, become ripe.

Second, plaintiffs' DFR claim as alleged in their motion for a preliminary injunction differs from the claim asserted in their complaint.  In their motion for a preliminary injunction, they allege that "USAPA breached its duty of fair representation . . . because the Memorandum of Understanding . . . abandons the Nicolau Award without a legitimate union purpose."  (Doc. 53, at 6)  This version of plaintiffs' DFR claim also fails because, as this Court recognized, the MOU is:  (1) "neutral" as to the Nicolau Award; (2) sets forth a lawful process for reaching an integrated seniority list, and (3) USAPA had an abundance of not merely legitimate but compelling reasons for adopting the MOU and all of its substantial benefits.  As explained more fully at the hearing and in USAPA's motion papers, the East Pilots made a significant economic sacrifice of the change of control provision in their contract in order to bring the economic and other benefits to the pilots as a whole including the West Pilots.  If the MOU had attempted to incorporate a specific seniority regime, it would have put at substantial risk the benefits to be obtained from the time based opportunity and leverage the union gained in light of the US Airways' interest in securing a timely agreement.  If a MOU had not been reached because of delay or disagreement based on seniority, all US Airways pilots would have suffered and perhaps permanently lost an opportunity to benefit all USAPA pilots if negotiations were delayed until following a merger.

To the extent plaintiffs claim that USAPA breaches its DFR if at any point in negotiations with the APA, it proposes anything other than the Nicolau Award, then such a claim is without merit because this Court has already ruled that "USAPA does not have to accept the Nicolau Award as the only basis upon which to negotiate a fair seniority agreement."  Tr. of May 14, 2013 Oral Argument on Plaintiffs' Mot. for Preliminary Injunction, 42:4-14.  Counsel for the plaintiffs has likewise admitted there are other seniority systems that are fair.  *Id.* at 55:12-57:1.

USAPA submits that plaintiffs' DFR claim is not ripe and without merit, and thus

cannot speculate as to a remedy, and indeed, such a position would be in direct violation of its duty to all its members. USAPA can state unequivocally that no remedy can include instructions to negotiate for a specific proposal or allow representatives of the plaintiffs to participate in negotiations or arbitration other than through USAPA's lawful procedures for the election and/or appointment of representatives.

Respectfully submitted this 17th day of May, 2013.

**Martin & Bonnett, P.L.L.C.**

By:  s/Susan Martin
Susan Martin
Jennifer L. Kroll
Martin & Bonnett
1850 N. Central Ave., Suite 2010
Phoenix, AZ  85004

Patrick J. Szymanski (*pro hac vice*)
Patrick J. Szymanski, PLLC
1900 L Street, NW, Suite 900
Washington, DC  20036

Brian J. O'Dwyer (*pro hac vice*)
Gary Silverman (*pro hac vice*)
Joy K. Mele (*pro hac vice*)
O'Dwyer & Bernstien, LLP
52 Duane Street, 5th Floor
New York, NY 10007

Attorneys for US Airline Pilots Association

17

**CERTIFICATE OF SERVICE**

1

2        I hereby certify that on May 17, 2013, I electronically transmitted the attached

3   document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

    Notice of Electronic Filing to the following CM/ECF registrants:

4

5   Marty Harper
    Andrew S. Jacob

6   Jennifer Axel
    Polsinelli PC

7   CityScape

8   One East Washington St., Ste. 1200
    Phoenix, AZ 85004

9

10  Attorneys for Plaintiffs

11
    US Airways, Inc.

12  Karen Gillen
    111 West Rio Salado Parkway

13  Tempe, AZ 85281

14
    Robert A. Siegel

15  Chris A. Hollinger

16  400 South Hope Street, Suite 1500
    Los Angeles, CA 90071-2899

17

18  Attorneys for US Airways, Inc.

19
    s/ T. Mahabir

20

21

22

23

24

25

26

27

28

18