Marty Harper (#003416)
mharper@polsinelli.com
Andrew S. Jacob (#22516)
ajacob@polsinelli.com
Jennifer Axel (#023883)
jaxel@polsinelli.com
POLSINELLI PC
CityScape
One East Washington St., Suite 1200
Phoenix, AZ 85004
Fax: (602) 264-7033
Phone: (602) 650-2000
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Don Addington; et al.,<br>Plaintiffs,<br><br>vs.<br><br>US Airline Pilots Ass'n, et al.,<br>Defendants. | No. CV-13-00471-PHX-ROS<br><br>**PLAINTIFFS' TRIAL MEMORANDUM ON THE PARTICIPATION OF WEST PILOTS IN THE MCCASKILL-BOND PROCESS** |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Overview

The McCaskill-Bond amendment to the Federal Aviation Act, 49 U.S.C. § 42112, note, § 117, (copy attached as Exhibit "A")[1] adopts certain seniority merger procedures that were used when the airline industry was regulated by the Civil Aviation Board (the "CAB"). Those procedures gave interested workers the right to participate in seniority merger arbitrations apart from their union representatives. That said, McCaskill-Bond

---

[1] If the Court believes that it needs more authority than just the current Complaint (Doc. 1) to decide the participation issues under McCaskill-Bond, then, with the Court's permission, the West Pilots will quickly file an amended complaint.

does not <u>require</u> the West Pilots to arbitrate enforcement of the Nicolau award. That is because McCaskill-Bond neither supersedes the Transition Agreement nor otherwise allows USAPA to disregard the Nicolau Award without "show[ing] some objective justification." *See Barton Brands, Ltd. v. NLRB*, 529 F.2d 793, 800 (7th Cir. 1976).

Regardless, if the West Pilots agree to arbitrate a resolution of the Nicolau Award dispute, the duty of fair representation ("DFR") requires that USAPA remain neutral. That requires a neutral process, akin to: (1) what the CAB required pursuant to the *Allegheny-Mohawk* Labor Protective Provisions ("LPPs"); (2) what McCaskill-Bond requires for current mergers; (3) what the Transition Agreement requires here; and (4) what occurred in the Nicolau arbitration. It also requires neutral definition of, and equal participation by, the parties in interest. Because USAPA must not take sides, those parties must be East Pilots and West Pilots, not USAPA.[2]

## II.   Legal Argument

### A.   McCaskill-Bond does not apply to the 2005 US Airways-America West merger.

As a preliminary matter, there are three reasons that McCaskill-Bond does not apply to the 2005 US Airways-America West merger and does not provide a process by which USAPA can legitimately disregard the Nicolau Award. <u>First</u>, McCaskill-Bond disclaims applying to airline mergers that occurred prior to December 26, 2007. 49 U.S.C. § 42112, note, § 117(c) ("This section shall not apply to any covered transaction involving a covered air carrier that took place before the date of enactment of this Act [Dec. 26, 2007]."). Not only did the US Airways-America West merger occur long before that date, but by that date Airways had already accepted the Nicolau Award seniority list. (Doc. 14-1 at App. 130, Doug Parker, Letter to US Airways Pilots (Dec. 20, 2007).)

---

[2] This is important because USAPA does not intend to be neutral. *See* Doc. 14-3 at App. 457, G. Hummel, *President's Message*, at 2 (Feb. 21, 2013) (stating that USAPA intends to "begin the seniority integration process with APA by pursuing date-of-hire integration of East and West Pilots).

Second, McCaskill-Bond expressly exempts seniority integration of employee groups that were represented by the same union at the time of the merger. 49 U.S.C. § 42112, note, § 117(a)(1) (providing that McCaskill-Bond does not apply where "the same collective bargaining agent represents the combining crafts or classes at each of the covered air carriers"). At the time of the 2005 US Airways-America West merger, ALPA represented both East and West Pilots. McCaskill-Bond, therefore, does not apply to East-West seniority integration.

Third, even if McCaskill-Bond did apply to East-West seniority integration (which it does not), it does not supersede provisions in a CBA (such as the Transition Agreement) that provide protections equivalent to the LPPs. 49 U.S.C. § 42112, note, § 117 (a)(2). ALPA Merger Policy, which was incorporated into the Transition Agreement, provided such protections. *Nat'l Airlines Acquisition*, *Arbitration Bd.*, 95 C.A.B. 584, 584, 1982 WL 35318, at *1 (C.A.B. Apr. 15, 1982). Consequently, McCaskill-Bond does not supersede the process, conducted pursuant to the Transition Agreement, that culminated in the Nicolau Award.

**B.    Precedent under the CAB.**

**1.    Under the CAB, employees affected by an airline merge could demand that seniority lists be integrated by a neutral arbitrator.**

McCaskill-Bond adopts LPP §§ 3 & 13, which controlled seniority integration in airline mergers when the industry was regulated by the Civil Aeronautics Board (the "CAB").[3] *See Allegheny-Mohawk*, 59 C.A.B. 19, 45 (1972). The purpose of the LPPs was to "ward off labor strife that could impede or delay a route transfer or merger, or detrimentally affect a carrier's stability or efficiency." *Braniff Master Exec. Council of the APA v. C.A.B.*, 693 F.2d 220, 223 (D.C. Cir. 1982). That same purpose underlies McCaskill-Bond.

---

[3] A copy of LPP §§ 3 & 13 is attached as Exhibit "B."

LPP § 3 required that "provisions shall be made for the integration of seniority lists in a fair and equitable manner." It also provided, if "employees affected" by a merger cannot agree on how to merge their seniority lists, that "the dispute may be submitted by either party for adjustment in accordance with section 13." And LPP § 13(a) provides that such adjustment shall be by neutral arbitration.

LPP §§ 3 & 13 also provided that the carrier was "<u>responsible</u> for integrating seniority lists." *Nat'l Airlines Acquisition*, 95 C.A.B. at 585, 1982 WL 35318, at *1 (emphasis added). As the CAB wrote, "Sections 3 and 13 impose <u>upon the carrier</u> a duty to integrate seniority listings fairly and equitably and a duty to submit certain disputes between it and its employees to arbitration." *Great No. Pilots Ass'n*, 91 C.A.B. 795, 799-800 (1981) (emphasis added). Consequently, to the extent that McCaskill-Bond applies to the East-West integration, it puts the onus on US Airways to ensure that the West Pilots are fairly integrated with the East Pilots.

Fair integration under the LPPs allowed all affected employees to participate in the neutral seniority integration process (either directly or through representatives). LPP § 13(a), for example, provided that "any party" involved in a merger related seniority dispute had a right to demand neutral arbitration. Consequently, under CAB regulation, sub-groups of affected employees had the right to participate in seniority integration arbitrations. That happened in *Pan Am. World Airways, Inc. v. CAB*, where the CAB ordered the carrier to arbitrate the seniority claim of a single employee. 683 F.2d 554 (D.C. Cir. 1982). It happened in other matters as well. *E.g.*, *So. Employees. v. Republic/ALEA*, 102 C.A.B. 616 (1983) (employee committee); *Pan Am-TWA Route Exchange, Arbitration Award*, 85 C.A.B. 2537 (1980) (three individual flight engineers). Indeed, the CAB read the LPPs as allowing it to order arbitration of any dispute that was "at least arguably" covered. *See Pan Am. World Airways*, 683 F.2d at 560 (approving this practice).

2847968.4

## 2. The general policy favoring arbitration supports this Court taking guidance from CAB-era decisions.

Unless Congress clearly states that "court-made law . . . is left undisturbed," the Supreme Court tells us that "Congress' silence is just that — silence." *Community for Creative Non-Violence v. Reid*, 490 US 730, 749 & n.15 (1989). Congress was silent as to whether to import wholesale the decisions reviewing the CAB's application of the LPPs. Consequently, the fact that McCaskill-Bond adopts LPP §§ 3 &13 does not mean that Congress intends federal courts to apply the LPPs now exactly as they were applied when the industry was regulated by the CAB. The Court, therefore, cannot use CAB-era decisions as the only basis to order arbitration of all disputes that are at "at least arguably" covered by the LPPs. *See Pan Am. World Airways*, 683 F.2d at 560.

But the Court has more than CAB-era decisions. It can rely on the generally strong presumption in favor of arbitration. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) ("[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). That general policy bolsters CAB-era decisions that favor arbitration and provides the Court solid ground to apply LPP §§ 3 & 13 as they were applied by the CAB.

## 3. Until the East-West dispute is fully-settled, the West Pilots should participate in all seniority integration procedures.

The question of pilot seniority integration from the 2005 US Airways-America West merger was settled by the Nicolau arbitration in 2007. To the extent that USAPA claims it was not, the West Pilots are "employees affected" by the present US Airways-American Airlines merger. Consequently, if McCaskill-Bond applies, the West Pilots have a right to fully participate in each phase of MOU seniority integration beginning with creation of the Seniority Integration Protocol.

McCaskill-Bond, however, does not provide a basis to <u>compel</u> the West Pilots to arbitrate because it provides affected workers with a right, but not an obligation, to arbitrate. That said, if another arbitration is the only quick way to resolve the dispute over

5

whether the Nicolau Award should be the seniority order of the US Airways pilots, the West Pilots will arbitrate that point with the East Pilots under the terms set out in the concurrently filed *Plts.' Trial Memo. on Remedy*.

### C.   If USAPA rejects the Nicolau Award it must provide a neutral process for determining seniority integration and disclaim any right to ratify the result.

USAPA must remain neutral when resolving a dispute such as this because it has no <u>legitimate</u> reason to prefer the position of one pilot group over another. *Cf. Rakestraw*, 981 F.2d at 152 (recognizing as a legitimate reason the goal of discouraging pilots from crossing future picket lines). Neutrality precludes USAPA, its officers and its attorneys from playing any role in the substantive determination of pilot seniority integration. Neither USAPA, nor its officers, nor its attorneys can advocate for the position of one side or decide the merits of the dispute. USAPA, therefore, must do nothing more than: (1) defer resolution of the seniority dispute to pilot committees for the East and West Pilot groups; (2) require (and pay) for these committees to be represented by counsel who have not represented USAPA;[4] and (3) pay a neutral arbitrator to determine the seniority order to be used for the East and West pilots.

Seniority arbitration must be "final and binding." LPP § 13(a). That means it cannot be rejected by the USAPA Board of Pilot Representatives. It cannot be put to a member ratification vote. Rather, USAPA must commit to adopt the result of seniority arbitration without ratification, just as ALPA did in 2005.

### III.   Conclusion

Under all controlling authority—the LPPs, McCaskill-Bond, and general principles of fair representation—any determination of the seniority dispute here must be done in a fair, neutral process. USAPA cannot take sides in that process (as it has heretofore always

---

[4] USAPA's present counsel owes fiduciary duties to the entire craft, both East and West sides, and breaches that duty by advocating East interests over those of West. There is no justification for that to continue during arbitration between East and West Pilots.

done). Its officers and attorneys must be neutral. There must be full participation by West Pilot representatives. USAPA must fund the West Pilots' efforts the same as it does for the East Pilots.

Dated this 17th day of May, 2013.

**POLSINELLI PC**

*/s/ Andrew S. Jacob*

By _____

Marty Harper
Andrew S. Jacob
Jennifer Axel
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of May 2013, I electronically transmitted the foregoing document to the U.S. District Court Clerk's Office by using the ECF System for filing and transmittal.

*/s/ Andrew S. Jacob*

By _____

2847968.4